**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,                          Case No. 21-cr-250 (JRT/TNL)

                Plaintiff,

v.                                                 **REPORT & RECOMMENDATION**

Jing Chen (1),

                Defendant.

Laura Provinzino and Ana H. Voss, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

Lauren Campoli, The Law Office of Lauren Campoli, PLLC, 7300 France Avenue, Suite 405, Minneapolis, MN 55435 (for Defendant).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Jing Chen's Motion to Dismiss for Pre-Indictment Delay, ECF No. 24, and Amended Motion to Dismiss for Pre-Indictment Delay, ECF No. 80.[1] These motions have been referred to the undersigned for a report and recommendation to the district court, the

---

[1] Defendant filed a Motion to Dismiss for Pre-Indictment Delay, ECF No. 24, and accompanying Memorandum in Support of Motion to Dismiss for Pre-Indictment Delay, ECF No. 25, on December 14, 2021. Defendant filed an Amended Motion to Dismiss for Pre-Indictment Delay, ECF No. 80, and accompanying Amended Memorandum in Support of Motion to Dismiss for Pre-Indictment Delay, ECF No. 81, on February 4, 2022. The amended motion "includes the addition of, and reference to, [additional exhibits] but is otherwise identical to the original motion." *See* ECF No. 80 at 1 n.1. The amended memorandum references additional exhibits and corrects a format and spelling error but is otherwise "unchanged from the original." *See* ECF No. 81 at 1 n.1.

Honorable John R. Tunheim, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. Local Rule 72.1.

A hearing on the motions was held on September 19, 2022. ECF No. 143. Assistant United States Attorneys Laura Provinzino and Ana H. Voss appeared on behalf of the United States of America (the "Government"). Attorney Lauren Campoli appeared on behalf of Defendant. Post-hearing briefing is now complete, and these motions are ripe for a determination by the Court.

## II. FINDINGS

At the hearing, the Court heard testimony from Defendant Jing Chen, Agent Andrew Gibart, Investigator Bruce Olson, and Investigator Weili Filley. Defendant offered and the Court received Defense Exhibit 2, a motion to intervene in Case No. 21-cv-1604 (MJD/DTS); Defense Exhibit 3, a proposed complaint-in-intervention in Case No. 21-cv-1604 (MJD/DTS); Defense Exhibit 4, a memorandum in support of a motion to dismiss the $340,000 action in Case No. 21-cv-2040 (SRN/ECW); Defense Exhibit 5, an email from Government's counsel; Defense Exhibit 6, letters to Magistrate Judge John F. Docherty regarding the seizure of passports and other identifying materials; Defense Exhibit 7, photos from the January 25, 2022, evidence review; and Defense Exhibit 8, a job offer letter. Defendant also offered Defense Exhibit 1, witness statements taken by Weili Filley, which was not received by the Court on hearsay grounds. *See* Tr. 229:15-232:23.[2] The

---

[2] The transcript has been temporarily sealed to allow for the process of redacting any personal identifiers, *see generally* D. Minn. LR 5.5. Any notice of intent to request redaction was due October 11, 2022. ECF No. 147. On October 11, Defendant filed a Notice of Intent to Request Redaction. ECF No. 155. On November 3, Defendant filed a Statement of Redaction, proposing redactions of certain addresses and names. ECF No. 199. The Court does not use any personal identifiers in this Report and Recommendation.

Government offered and the Court received: Government Exhibit 1, a warrant for a safe deposit box at Wells Fargo Bank in Eau Claire, Wisconsin; Government Exhibit 2, the accompanying warrant return; Government Exhibit 3, a warrant for a safe deposit box at U.S. Bank in Eau Claire, Wisconsin; Government Exhibit 4, the accompanying warrant return; Government Exhibit 7, evidence receipts for the January 19, 2022, evidence review at the Minnesota Bureau of Criminal Apprehension (BCA); Government Exhibit 8, evidence receipts for the January 25, 2022, evidence review at the BCA; Government Exhibit 9, certificates of completion of various registered nurse (RN) courses; Government Exhibit 10, copies of items returned to Defendant's counsel on January 25, 2022; and Government Exhibit 11, a warrant for Defendant's home and accompanying warrant return.

Based upon the file and documents contained therein, along with the testimony and exhibits presented, the undersigned Magistrate Judge makes the following findings.

## A. Execution of the Search Warrants

On May 10, 2018, law enforcement officers searched Defendant's Plymouth, Minnesota home pursuant to a search warrant. Tr. 61:13-63:11; *see also* Gov't Ex. 11. Officers seized numerous items from Defendant's home, including electronics, clothing, and home photos and videos. Tr. 63:12-64:6. Officers also seized Defendant's U.S. passport, expired Chinese passport, naturalization certificate, driver's license, birth certificate, Social Security card, medical insurance cards, keys to her home and safe deposit boxes, and over $33,000, among other items. Tr. 64:8-67:13.

On that date, law enforcement officers also searched two safe deposit boxes in Eau Claire, Wisconsin pursuant to search warrants. Tr. 156:9-15; *see also* Gov't Exs. 1, 3. One

of the safe deposit boxes was located at a Wells Fargo Bank, the other was at a U.S. Bank, and both were in the name of Defendant's mother, Fenglan Wu.  Tr. 158:23-159:3, 167:20-23.  Law enforcement agents, including Agent Andrew Gibart who testified at the hearing, searched the safe deposit boxes.  Tr. 156:16-157:11, 161:24-162:3.  Agents seized $150,000 from the Wells Fargo safe deposit box, which Defendant claims belonged to her, and $190,000 from the U.S. Bank safe deposit box, which Defendant claims belonged to her, her mother, and her sisters.  Tr. 84:17-85:13, 163:24-164:14; *see also* Gov't Exs. 2, 4.  Agents did not send a notice to Defendant that the money was seized from the safe deposit boxes or leave her an inventory of what was seized.  Tr. 164:20-165:4.

### B.  Aftermath of the Execution of the Search Warrants

According to the Government, it "made efforts, ultimately unsuccessful ones, to reach a pre-indictment resolution with the defendants."  *See* Def. Ex. 5.  Defendant was indicted in this case in November 2021.  Tr. 125:11-12, 149:16-21.  Defendant was not arrested and was instead summoned to make a court appearance via Zoom in December 2021.  Tr. 125:6-23, 149:22-24; *see also* ECF No. 4.  Thus, there was approximately a three-year and seven-month pre-indictment delay between the execution of the search warrants and the Indictment.

During this pre-indictment delay, Defendant testified that she suffered significant hardship.  Specifically, Defendant was not able to work during the pre-indictment delay.  She testified that she tried to find several jobs, but she was unable to secure one without her Social Security card, which the Government seized in May 2018.  Tr. 71:25-72:12, 76:21-77:16, 82:14-83:5; *see also* Def. Ex. 8.  Defendant's last official record working in

4

the State of Minnesota, however, was in the first quarter of 2015, several years before her Social Security card was seized by the Government. Tr. 92:19-93:7. Defendant started working again in July 2022, several months after she was indicted. Tr. 100:8-13.

Defendant also testified that as a result of the pre-indictment delay: she tried to kill herself because she does not want to shame her husband; she had to move to a new home because her neighbors "look[ed] at [her] just like a big criminal" after the search warrant was executed at her home; and she feels like she should go back to China because she has no identification here and feels like she does not belong here. Tr. 73:17-74:9, 88:10-89:21. She also testified that she "feel[s] like [she] is invisible in this world. [She] cannot go back to China. [She] cannot work. [She] cannot travel." Tr. 72:15-17. She testified that the Government seized all of her "life savings" from the safe deposit boxes in Eau Claire. Tr. 83:9-25. She testified that while her husband, who makes between approximately $240,000 to $500,000 per year, covers her and her children's expenses, she has been unable to take care of her family, including her mother. Tr. 83:15-22, 119:5-20.

### C. Return of Documents

The Government retained possession of Defendant's identifying documents, including her U.S. passport, Social Security card, and Minnesota driver's license[3] throughout the three-year and seven-month pre-indictment delay. *See* Gov't Exs. 7, 8, 10; *see also* Tr. 90:17-91:4, 100:14-101:2. Defendant's counsel "repeatedly requested the

---

[3] A few weeks after the May 10, 2018, execution of the search warrants, Defendant obtained a new Minnesota driver's license. Tr. 51:15-53:12, 71:18-24. She was not able to obtain a REAL ID or enhanced ID, only a standard driver's license, which allowed her to drive but not travel by airplane. Tr. 71:18-24.

return of [Defendant's] essential identifying documents from the Government, along with the $340,000 that was seized without notice from her safe-deposit boxes" during civil forfeiture proceedings. *See* Def. Ex. 6; *see also* Def. Exs. 2, 3, 4.

In January 2022, Defendant's counsel and Defendant's investigator, Bruce Olson, participated in two evidence reviews at the BCA. Tr. 171:18-173:23. They reviewed evidence with the Government's counsel, a BCA agent, a treasury department agent, an immigration agent, and other administrative individuals. Tr. 175:17-186:1. The January 19, 2022, evidence review took about three-and-a-half hours. Tr. 185:21-186:4. The Government returned Defendant's Social Security card (in the name of Jing Chen), California driver's license, Defendant's husband's U.S. passport, and a green envelope with a key. *See* Gov't Ex. 7. The second evidence review on January 25, 2022, lasted about four hours. Tr. 185:21-186:4, 198:13-17. Defendant's counsel and investigator were able to view Defendant's passport, naturalization certificate, birth certificate, Social Security card, driver's license, certificate of marriage, nursing certificates and licenses, and banking and credit cards. Tr. 186:20-192:21; *see also* Def. Ex. 7. The Government returned Defendant's Minnesota enhanced driver's license, California nursing license, Social Security card (in the name of Jing Redding, Defendant's former name), Minnesota nursing license, and marriage certificate, among other items. *See* Gov't Exs. 8, 9, 10; Tr. 90:17-91:4, 100:14-101:2. Defendant was not provided a specific inventory list documenting everything that the Government had in its possession and where that evidence was located. Tr. 201:23-202:2.

The Government has not yet returned Defendant's U.S. passport. Tr. 128:16-23,

6

218:8-17.  After she was indicted, the district court set Defendant's conditions of release, which included turning over her passport to her case agent.  Tr. 150:2-10.  At the time, Defendant expressed that she did not have a passport to turn over because the Government has retained it since the execution of the search warrants in 2018.  Tr. 150:11-23.  Nor has the Government returned Defendant's naturalization certificate.  Tr. 130:5-10.  The Government contends it is retaining Defendant's naturalization certificate because Defendant failed to disclose a 2006 conviction for prostitution to the U.S. Citizenship and Naturalization Services.  Tr. 130:15-132:5.

### D.  Defendant's Investigation

At the hearing, Weili Filley testified that she is an investigator with a private investigation company and generally investigates civil and criminal cases with Chinese-speaking clients.  Tr. 223:6-224:8.  She testified that in July 2018, Jean Brandl, attorney for co-defendant Ying Chen, contacted her office and asked if she could interview witnesses who worked at certain massage parlors in the Minnesota area.  Tr. 224:9-225:6.

Of the 11 names of witnesses that Ms. Brandl provided, Ms. Filley was able to locate seven of them.  Tr. 228:7-10.  Ms. Filley interviewed the seven witnesses, Y.H., S.H., K.Z., Z.Y., J.D., F.T., and L.J., between August and October 2018.  Tr. 225:11-12, 251:21-253:5.  She met with two of them in person, two by phone interview/video interview, and three by phone interview.  Tr. 228:11-18.  She wrote reports after the interviews summarizing what the witnesses said.  Tr. 228:19-229:1.

Specifically, Ms. Filley interviewed Y.H. in person in San Diego.  Tr. 247:5-12.  Y.H. "was very eager to talk to [Ms. Filley]."  Tr. 247:12.  She answered Ms. Filley's

7

specific questions about the case and provided Ms. Filley "with a lot of information about the kind of work that she did." Tr. 247:13-20. Ms. Filley also interviewed S.H. in person in Oregon and took her statement. Tr. 248:17-20. Ms. Filley interviewed K.Z. by phone, and she "was very open to talk about what happened to her at the [massage] parlor and what happened to the other - - during the police raid." Tr. 233:14-234:18, 235:13-20. Ms. Filley also interviewed Z.Y., who spoke about the facts and circumstances of her work in Minnesota. Tr. 240:25-243:8. Ms. Filley also took statements from J.D., F.T., and L.J. Tr. 244:19-246:18, 250:7-251:5. Ms. Filley testified that she asked each of the seven witnesses whether they were instructed to provide sexual services to clients. Tr. 255:6-16. She also asked specifically what the job responsibilities of the witnesses were, their ages, their locations, who they worked for, and whether any individual instructed the masseuses to perform sexual services of any kind. Tr. 255:18-256:15.

Defendant's counsel did not have contact with Ms. Filley's office until "some months prior" to the September 2022 motions hearing to discuss briefly the possibility of Ms. Filley testifying at the hearing. Tr. 225:16-19. Defendant's counsel spoke with Ms. Filley for the first time one week before the September 2022 motions hearing. Tr. 225:13-15. Defendant's counsel instructed Ms. Filley "to follow up with [the] witnesses to find out where they are" and to see "the potential of them testifying for [Defendant] at trial." Tr. 245:12-18.

During the week before the motions hearing, Ms. Filley attempted to contact the seven witnesses she had spoken to in 2018. Tr. 258:14-18. Out of the seven witnesses that she interviewed in 2018, she was able to reach four of them. Tr. 253:7-12. Specifically,

she made contact with Z.Y., Y.H., K.Z., and J.D.  Tr. 253:13-21.  She was not able to reach S.H., F.T., or L.J.  Tr. 248:17-249:13, 250:12-251:5.

Ms. Filley testified that she called S.H., but she did not answer her phone.  Tr. 248:17-249:13.  Ms. Filley also called the massage parlor that S.H. worked at in Oregon in 2018, but they did not know where she was.  Tr. 249:1-2.  Ms. Filley also tried contacting F.T., but was unable to reach her.  Tr. 250:24-251:1.  Ms. Filley testified that she called L.J. at the phone number she contacted her at in 2018, but L.J. did not answer.  Tr. 244:19-245:5.  Ms. Filley texted L.J. in Chinese identifying who she was and asking her to call, but she never did.  Tr. 245:5-11.

Ms. Filley testified that she "did a SkipMax for all the witnesses that [her office was] unable to reach" and "a Skopenow to verify their address or phone numbers," which are search engines that use sources to search for people.  Tr. 249:7-13.  She testified that she felt that her efforts to contact the witnesses the week before the hearing were exhaustive.  *See* Tr. 249:14-15.  But when asked whether she felt there was anything more she could have done to try to reach S.H., F.T., or L.J., she testified that, "I think we need to go to their location, if we still have the address, to find out - - to see if they're there and just doesn't want to answer or for some reason they're not responding."  Tr. 249:16-21.

### III. CONCLUSIONS OF LAW

Based upon the foregoing findings, the undersigned makes the following conclusions of law.  Defendant argues that the Indictment should be dismissed because the three-year and seven-month pre-indictment delay between the execution of the search warrants and the Indictment violated (1) her Sixth Amendment right to a speedy trial, and

(2) her Fifth Amendment right to due process. For the reasons set forth below, the Court finds that the pre-indictment delay did not violate Defendant's right to a speedy trial or right to due process, and therefore recommends that Defendant's motions to dismiss for pre-indictment delay be denied.

### A. Sixth Amendment Right to a Speedy Trial

First, Defendant argues that her Sixth Amendment right to a speedy trial was "triggered when the Government formally, unilaterally, and extra-judicially restrained [her] freedom of movement by withholding her essential identifying documents, negating her citizenship, preventing her freedom of movement, and eliminating her ability to work." Def.'s Mem. in Supp. at 9, ECF No. 156. She contends that she was "constructively arrested and imprisoned" for the three-year and seven-month pre-indictment delay between the execution of the warrants and the Indictment, and the Court should therefore apply the four-factor speedy-trial violation test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). Def.'s Mem. in Supp. at 10. Applying the *Barker* factors, Defendant argues that "the Court should dismiss this case as a blatant violation of the Sixth Amendment right to speedy trial." *Id*. at 13.

The Government argues that the Sixth Amendment right to a speedy trial does not apply to the three-year and seven-month pre-indictment delay because the right only attaches after a person has been arrested or indicted. Gov't Mem. in Opp. at 10, ECF No. 193. Therefore, the Government contends that the *Barker* factors do not apply, and "[t]he pre-indictment speedy trial right that [Defendant] argues for simply does not apply here." *Id*. at 10-11, 11 n.3.

The Court agrees with the Government.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. Const. Amend. VI.  The Speedy Trial Clause of the Sixth Amendment, however, "does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused."  *United States v. MacDonald*, 456 U.S. 1, 6 (1982) (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)).  In other words, "no Sixth Amendment right to a speedy trial arises until charges are pending."  *Id*. at 7; *see also Marion*, 404 U.S. at 313 ("[T]he Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused' . . . .").  In fact, courts that have considered this issue "have never reversed a conviction or dismissed an indictment solely on the basis of the Sixth Amendment's speedy trial provision where only pre-indictment delay was involved."  *See Marion*, 404 U.S. at 315.  Here, Defendant was not indicted until November 2021.  Tr. 125:11-12, 149:16-21.  She was never arrested or brought into custody.  Tr. 125:13-23, 149:22-24.  Defendant was therefore not "officially accused" until she was indicted in November 2021, and her Sixth Amendment right to a speedy trial did not attach until then.  *See MacDonald*, 456 U.S. at 6.  "[T]he speedy-trial analysis of *Barker* . . . is therefore inapplicable" to the three-year and seven-month pre-indictment delay.  *See Underdahl v. Carlson*, 462 F.3d 796, 799-800 (8th Cir. 2006) (citing *Marion*, 404 U.S. at 320) ("Any prosecutorial delay that occurs before a suspect has been arrested, or has been indicted or otherwise charged with a crime, does not come within the ambit of the [S]ixth [A]mendment.").

Defendant contends that the right to a speedy trial applies because while she was

not indicted or arrested during the three-year and seven-month pre-indictment delay, the Government still "restrained [her] freedom" during this time by "withholding her essential identifying documents, negating her citizenship, preventing her freedom of movement, and eliminating her ability to work."  Def.'s Mem. in Supp. at 9-10; *see also Marion*, 404 U.S. at 320 ("[I]t is either a formal indictment or information *or else the actual restraints imposed by arrest and holding to answer a criminal charge* that engage the particular protections of the speedy trial provision of the Sixth Amendment.") (emphasis added).  But the focus of whether a defendant has been subjected to "actual restraints" to trigger speedy trial rights is on whether they have been *arrested*. *See United States v. Jackson*, 504 F.2d 337, 338 (8th Cir. 1974) ("The Sixth Amendment right to a speedy trial is not triggered until a criminal suspect becomes an accused, either by arrest or indictment.") (citation and quotations omitted); *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002) ("[T]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences."); *United States v. Gonzalez*, 671 F.2d 441, 444 (8th Cir. 1982) ("The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial.").  A defendant who has not been taken before a magistrate, formally charged, or held in custody pending the filing of formal charges has not been subjected to "the actual restraints imposed by arrest and holding to answer a criminal charge." *See United States v. Boles*, 684 F.2d 534, 535 (8th Cir. 1982); *see also United States v. Stierwalt*, 16 F.3d 282, 284 (8th Cir. 1994) (holding that the defendant's Sixth Amendment right to a speedy trial was not implicated by pre-indictment delay where he was arrested but then released

without being charged and was not required to post bond or given a court date to appear
and answer to any charges); *Faruq v. Little*, No. 06-cv-5182, 2007 WL 25500, at * 3 (W.D.
Ark. Jan. 3, 2007) ("[The defendant] has not been arrested on the warrant and no criminal
complaint, information or indictment has been filed. The Sixth Amendment speedy trial
provisions are therefore not at issue."). Here, "[f]urther judicial proceedings would have
been necessary to subject [Defendant] to any actual restraints" because she was neither
under indictment, arrested, nor subject to bail. *See United States v. Loud Hawk*, 474 U.S.
302, 311-12 (1986).

While Defendant may have experienced disruption in her life between the execution
of the search warrants and the Indictment, the Supreme Court has made clear that the Sixth
Amendment right to a speedy trial does not extend "to the period prior to arrest." *See
Marion*, 404 U.S. at 321. As the Court in *Marion* stated:

> Until [arrest] occurs, a citizen suffers no restraints on [her]
> liberty and is not the subject of public accusation: [her]
> situation does not compare with that of a defendant who has
> been arrested and held to answer. Passage of time, whether
> before or after arrest, may impair memories, cause evidence to
> be lost, deprive the defendant of witnesses, and otherwise
> interfere with [her] ability to defend [herself]. But this
> possibility of prejudice at trial is not itself sufficient reason to
> wrench the Sixth Amendment from its proper context.

*Id*. The Sixth Amendment right to a speedy trial "is designed to minimize the possibility
of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial,
impairment of liberty imposed on an accused *while released on bail*, and to shorten the
disruption of life caused by *arrest and the presence of unresolved criminal charges*."
*MacDonald*, 456 U.S. at 8 (emphasis added). It does not "protect a defendant from all

13

effects flowing from a delay before trial," including "stress, discomfort, and perhaps a certain disruption in normal life," or "limit the length of a preindictment criminal investigation." *Loud Hawk*, 474 U.S. at 311-12 (citing *MacDonald*, 456 U.S. at 9). When no charges are pending, "personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending." *MacDonald*, 456 U.S. at 9. "The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations." *Id.* at 8; *see also Stierwalt*, 16 F.3d at 284 ("[The defendant's] right to a prompt indictment is protected by the appropriate statute of limitations and by the Due Process Clause of the Fifth Amendment.") (citations omitted).

In sum, the Speedy Trial Clause of the Sixth Amendment "does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused." *MacDonald*, 456 U.S. at 6 (citing *Marion*, 404 U.S. at 313). Here, Defendant was not officially accused or otherwise subjected to the actual restraints imposed by arrest until she was indicted in November 2021. Therefore, Defendant's Sixth Amendment right to a speedy trial was not implicated by the three-year and seven-month pre-indictment delay, and the speedy-trial analysis of *Barker* does not apply. *See Underdahl*, 462 F.3d at 800. Accordingly, it is recommended that Defendant's motions to dismiss for pre-indictment delay as a Sixth Amendment speedy-trial violation be denied.

### B. Fifth Amendment Right to Due Process

In the alternative, Defendant argues that the Indictment should be dismissed because the three-year and seven-month pre-indictment delay violated her Fifth Amendment right

14

to due process.  Def.'s Mem. in Supp. at 13.  She contends that the delay resulted in actual and substantial prejudice to the presentation of her defense, and the Government intentionally delayed her Indictment to either gain a tactical advantage or to harass her.  *Id*.

Defendant's "right to a prompt indictment is protected by the appropriate statute of limitations and by the Due Process Clause of the Fifth Amendment."  *Stierwalt*, 16 F.3d at 284 (citing *Marion*, 404 U.S. at 322; *MacDonald*, 456 U.S. at 7).  "Statutes of limitation provide the primary guarantee against prosecution of a defendant on overly stale charges," while the Due Process Clause has a "limited role to play in protecting against oppressive delay."  *United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir. 1986) (citations omitted).

Defendant does not make a statute of limitations argument, but the Court notes that the charges in the Indictment are within the five-year statute of limitations.  Under the statute of limitations, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed."  18 U.S.C. § 3282(a).  The statute of limitations "typically begins to run once it is complete—in other words, once all elements of the offense are established."  *United States v. Askia*, 893 F.3d 1110, 1116 (8th Cir. 2018) (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)).  The statute of limitations for a "continuing offense," namely, "a single crime that continues over time," does not start until the offense expires.  *Id*.  Here, the time frame for the charges in Counts 1 through 3 of the Indictment is "[f]rom in or about 2014 through in or about May 2018," and the time frame for the charges in Counts 4 and 5 of the Indictment is "[o]n or about . . . December 11, 2017."  *See generally* ECF No. 1.  Defendant was indicted on November 23, 2021.  *See id*.  The

Indictment was therefore found within the five-year statute of limitations.

While Defendant was indicted within the statute of limitations, "due process . . . require[s] the District Court to dismiss the [I]ndictment if [Defendant] demonstrate[s] 'that the pre-indictment delay in this case caused substantial prejudice to [her] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over [Defendant].'" *See Stierwalt*, 16 F.3d at 285 (quoting *Marion*, 404 U.S. at 324). In order to prove a violation of her due process rights sufficient to warrant dismissal of the Indictment, Defendant must establish that (1) the delay resulted in actual and substantial prejudice to the presentation of her case, and (2) the Government intentionally delayed Defendant's Indictment either to gain a tactical advantage or to harass her. *See Bartlett*, 794 F.2d at 1289; *see also Marion*, 404 U.S. at 324; *United States v. Carlson*, 697 F.2d 231, 236 (8th Cir. 1983); *United States v. Lovasco*, 431 U.S. 783, 789-90 (1977) (finding that the defendant must demonstrate "[a]ctual prejudice to the defense of [his] criminal case"). "The court will inquire into the reasons for delay *only* where actual prejudice has been established." *United States v. Gladney*, 474 F.3d 1027, 1030-31 (emphasis in original) (citing *United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000)). "[D]efendant must overcome a high hurdle when contending that a pre-indictment delay that does not violate the statute of limitations is violative of the due process clause." *See Jackson*, 446 F.3d at 849.

First, Defendant must meet her burden to prove "actual prejudice" resulting from the pre-indictment delay. *See Bartlett*, 794 F.2d at 1289 (citations omitted). "To prove actual prejudice, [Defendant] must specifically identify witnesses or documents lost during

delay properly attributable to the government." *See id*. (citations omitted); *see also United States v. Brockman*, 183 F.3d 891, 895 (8th Cir. 1999). It is insufficient for Defendant to make speculative or conclusory claims alleging possible prejudice as a result of the delay. *See Bartlett*, 794 F.2d at 1289-90 (citing *Marion*, 404 U.S. at 325-26; *United States v. Purham*, 725 F.2d 450, 453 (8th Cir. 1984)); *Brockman*, 183 F.3d at 895. Defendant must "relate the substance of the testimony which would be offered by the missing witnesses or the information contained in lost documents in sufficient detail to permit [the Court] to assess accurately whether the information is material to [her] defense." *See Bartlett*, 794 F.2d at 1290 (citations omitted); *Brockman*, 183 F.3d at 895. Defendant must also show that the missing testimony or information is not available through other sources. *See Bartlett*, 794 F.2d at 1290 (citations omitted); *Brockman*, 183 F.3d at 895. Overall, Defendant "must demonstrate that the prejudice *actually* impaired [her] ability to meaningfully present a defense." *See Bartlett*, 794 F.2d at 1290 (emphasis in original) (citations omitted).

Defendant first argues that she was actually and substantially prejudiced by the pre-indictment delay because "her freedoms were restrained, and her life and property stolen." Def.'s Mem. in Supp. at 13. Specifically, she contends that she was prejudiced by the pre-indictment delay because:

> She was unable to work. She passed on a nursing job because she could not produce her social security card. She was unable to travel outside the U.S. Her identity was erased. The Government's withholding of her passport, and all her essential identifying documents, trapped [her] in an anxiety-riddled limbo where, with her pre-trial restraints, she could not escape.

*Id*. at 12.

Even if this is true, however, it does not demonstrate "actual prejudice for the purpose of the due process clause." *See Bartlett*, 794 F.2d at 1290. "The Supreme Court's concern in *Marion* and *Lovasco* was with due process rights to a fair trial and prejudice *to the defense of the case*." *Bartlett*, 794 F.2d at 1290 (emphasis added) (citing *Lovasco*, 431 U.S. at 789-90; *Marion*, 404 U.S. at 324); *see also Jackson*, 446 F.3d at 852 (holding that the prejudice inquiry under the due process clause is limited "to the effects of the delay on the defendant's ability to present an effective defense"). In other words, the prejudice against which the Fifth Amendment is intended to protect is prejudice to a defendant "in the presentation of [her] case." *Brockman*, 183 F.3d at 896. Here, Defendant has not demonstrated how the Government's taking of her "essential identifying documents" impacts her ability to present an effective defense. Nor has she identified any information contained in those documents that is material to her defense. *See Bartlett*, 794 F.2d at 1290. She only asserts that she has been prejudiced because she could not work without her Social Security card and could not travel outside the United States without her passport. *See* Def.'s Mem. in Supp. at 12-13. This is not the type of prejudice that the Fifth Amendment is intended to protect against. *See Brockman*, 183 F.3d at 896; *see also Jackson*, 446 F.3d at 852 ("[The defendant's] asserted emotional, financial, and social distress [ ] fails to support a claim of actual and substantial prejudice to the presentation of his defense."). Defendant has not demonstrated that any prejudice from "her freedoms [being] restrained, and her life and property stolen," *see* Def.'s Mem. in Supp. at 13, "*actually* impaired [her] ability to meaningfully present [her] defense." *See Bartlett*, 794

F.2d at 1290 (emphasis in original) (citations omitted). Thus, Defendant has not met her burden to show actual and substantial prejudice as a result of the Government taking her "essential identifying documents."

Defendant also argues that "her defense crumbled day by day for three years while her witnesses left the state, obtained new employment, and in the case of L.S., left the country." Def.'s Mem. in Supp. at 13. Specifically, Defendant contends that "[t]he witnesses, who provided consistent and exculpatory statements in 2018," are now reduced to just the four witnesses who could be contacted years later. *Id*. at 12-13. She argues that the testimony of all the witnesses together in the aggregate would have been more powerful, and that even the four witnesses that Ms. Filley could contact in 2022 "may or may not be available for a future trial." *Id*. at 13. She contends that this demonstrates "actual, not speculative" prejudice, as this is the "rare case where the witnesses were interviewed early and a proffer was made to the Court." *Id*. at 13-14. According to Defendant, "[s]peculation about the content and value of a prospective witness is not required here." *Id*. at 14.

Defendant's argument is flawed for several reasons. First, Defendant makes speculative and conclusory claims that three of the seven witnesses she interviewed in 2018 but was unable to reach in 2022 will be unavailable for trial. Defendant, through Ms. Filley, waited until just one week before the September 19, 2022, motions hearing to attempt to reestablish contact with the seven witnesses she interviewed between August and October 2018. *See* Tr. 258:14-18. Defendant admittedly had no contact with Ms. Filley, and Ms. Filley no contact with the witnesses, between late 2018 and a week or so

before the September 2022 motions hearing.  *See* Tr. 255:11-22.  These were *Defendant's* witnesses, and she provides no explanation for why she made no effort to keep in contact with them.  Even still, with just days' notice, Ms. Filley was able to reach four of the seven witnesses she spoke with in 2018.  Defendant has not established definitively that the three witnesses Ms. Filley could not reach before the motions hearing have been "lost" and will be unavailable for trial.  *Contra Bartlett*, 794 F.2d at 1289-91 (analyzing whether a defendant was prejudiced where he specifically identified witnesses who had died during the pre-indictment delay and would therefore be unavailable for trial); *United States v. Scoggins*, 992 F.2d 164, 167 (8th Cir. 1993) (same).

Further, Defendant's efforts to contact her seven witnesses before the motions hearing were not exhaustive.  Ms. Filley only attempted to call or text S.H., F.T, and L.J. at phone numbers they used in 2018, and used a search engine to try to find new phone numbers and addresses.  *See* Tr. 245:5-251:1.  In fact, Ms. Filley herself suggested that she could do more to reestablish contact with the three witnesses that she could not reach in the week prior to the motions hearing.  She testified that, "I think we need to go to their location, if we still have the address, to find out - - to see if they're there and just doesn't want to answer or for some reason they're not responding."  Tr. 249:16-21.  Considering that Defendant only attempted to contact the three "missing" witnesses one week prior to the motions hearing and has not exhausted her efforts to contact them, Defendant's claim that her defense is "now reduced to just the four witnesses" and she will therefore be prejudiced is speculative.  It is not sufficient to advance speculative and premature claims of prejudice which may never occur.  *See* Def.'s Mem. in Supp. at 12-13; *see also Marion*,

404 U.S. at 325-26.

Additionally, Defendant has not "relate[d] the substance of the testimony which would be offered by the missing witnesses . . . in sufficient detail to permit [the Court] to assess accurately whether the information is material to [her] defense." *See Bartlett*, 794 F.2d at 1290 (citations omitted); *Brockman*, 183 F.3d at 895. Defendant argues that *all seven witnesses* that Ms. Filley interviewed in 2018 "attested that they were not hired for the purpose of any illegal acts nor were they instructed to perform any illegal acts." Def.'s Mem. in Supp. at 5. The witnesses further stated that "they held legitimate massage licenses to perform legitimate massages." *Id*. Defendant argues that the testimony of seven witnesses "in the aggregate" would have been "more powerful" than the testimony of four witnesses. *See id*. at 13. But this suggests that the four available witnesses could present the same testimony as the three "missing" witnesses could have. *See Bartlett*, 794 F.2d at 1290 ("[T]he defendant must show that the missing testimony or information is not available through substitute sources."). Defendant did not explain what testimony the "missing" witnesses, S.H., F.T., and L.J, *individually* would have provided that is material to her defense. Nor has she explained how the missing testimony could have altered the outcome of her trial. She has also failed to establish that the "missing" witnesses' testimony is not available through substitute sources, namely, the other four available witnesses. *See Bartlett*, 794 F.2d at 1290. Thus, Defendant has not met her burden to demonstrate that she is prejudiced without S.H., F.T., or L.J.'s testimony.

In sum, Defendant has not proven prejudice resulting from the pre-indictment delay, or "that the prejudice *actually* impaired [her] ability to meaningfully present a defense."

*See Bartlett*, 794 F.2d at 1290 (emphasis in original) (citations omitted).  Because Defendant has failed to establish actual and substantial prejudice, the Court will not assess the Government's reasons for the delay.  *See Gladney*, 474 F.3d at 1030-31 ("The court will inquire into the reasons for delay *only* where actual prejudice has been established.") (emphasis in original); *see also United States v. Benshop*, 138 F.3d 1229, 1232 (8th Cir. 1998) ("A defendant's failure on proof on [the] issue [of prejudice] is a sufficient ground on which to deny a motion to dismiss."); *Sprouts*, 282 F.3d at 1041 ("If the defendant fails to establish actual prejudice, [the Court] need not assess the government's rationale for the delay."); *United States v. Jakisa*, No. 14-cr-119 (SRN/SER), 2015 WL 1810259, at *4 (D. Minn. Apr. 21, 2015) (declining to analyze the reasons for the pre-indictment delay where the defendant failed to meet his burden to establish that any pre-indictment delay resulted in actual and substantial prejudice to the presentation of his defense).  Defendant has not "overcome [the] high hurdle" to establish that the pre-indictment delay violates the due process clause.  *See Jackson*, 446 F.3d at 849.  Accordingly, it is recommended that Defendant's motions to dismiss for pre-indictment delay as a Fifth Amendment due process violation be denied.

[*Continued on next page.*]

## IV. RECOMMENDATION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss for Pre-Indictment Delay, ECF No. 24, be **DENIED**.

2. Defendant's Amended Motion to Dismiss for Pre-Indictment Delay, ECF No. 80, be **DENIED**.

Date: November __30__, 2022                    _____*s/ Tony N. Leung*_____
                                               Tony N. Leung
                                               United States Magistrate Judge
                                               District of Minnesota

                                               *United States v. Chen*
                                               Case No. 21-cr-250(1) (JRT/TNL)

## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.